### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

| | | |
|---|---|---|
| KITTY K. | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:20-CV-434-JVB |
| | ) | |
| KILOLO KIJAKAZI, Acting Commissioner | ) | |
| of the Social Security Administration, | ) | |
| Defendant. | ) | |

### <u>OPINION AND ORDER</u>

Plaintiff Kitty K. seeks judicial review of the Social Security Commissioner's decision denying her application for child's insurance benefits and asks this Court to remand the case. For the reasons below, this Court affirms the Administrative Law Judge's decision.

### PROCEDURAL BACKGROUND

Plaintiff applied for child's insurance benefits on May 18, 2018. (AR 15). In her application, Plaintiff alleged that she became disabled on September 1, 2017. *Id.* Plaintiff was born on October 26, 1999, and therefore she had not attained the age of 22 as of the alleged onset date. *Id.* at 17. After a hearing in 2019, the Administrative Law Judge (ALJ) found that Plaintiff suffers from the severe impairments of: Ehlers-Danlos syndrome; autonomic dysfunction; postural orthostatic tachycardia syndrome (POTS); iron deficiency anemia; major depressive disorder; anxiety; and post-traumatic stress disorder (PTSD). *Id.* at 18. The ALJ also found that Plaintiff suffered from the non-severe impairments of vitamin D deficiency and gastroesophageal reflux disease (GERD). *Id.* The ALJ found that Plaintiff has no past relevant work. *Id.* at 22. However, the ALJ found that Plaintiff could perform other work that exists in significant numbers in the national economy. *Id.* at 23-24. Therefore, the ALJ found her to be not disabled from September

1, 2017, through the date of the decision. *Id.* at 24. This decision became final when the Appeals Council denied Plaintiff's request for review.

## STANDARD OF REVIEW

This Court has authority to review the Commissioner's decision under 42 U.S.C. § 405(g). The Court will ensure that the ALJ built an "accurate and logical bridge" from evidence to conclusion. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). This requires the ALJ to "confront the [plaintiff's] evidence" and "explain why it was rejected." *Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016). The Court will uphold decisions that apply the correct legal standard and are supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support [the ALJ's] conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

## DISABILITY STANDARD

The Commissioner follows a five-step inquiry in evaluating claims for disability benefits under the Social Security Act:

> (1) Whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; (4) if the claimant does not have a conclusively disabling impairment, whether he can perform his past relevant work; and (5) whether the claimant is capable of performing any work in the national economy.

*Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012). The claimant bears the burden of proof at every step except step five. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). For child's insurance benefits in cases where the claimant is 18 years old or older, the claimant must establish that disability began before attaining age 22. 20 C.F.R. § 404.350(a)(5).

## ANALYSIS

Plaintiff offers four arguments to support her request for remand: that the ALJ erred by failing to analyze the 4.00 listings; that the ALJ erred in the assessment of her subjective symptoms and improperly relied on her desire to work; that the vocational expert (VE) failed to provide proper foundation or a solid basis for the substantial number of jobs; and the ALJ erred by failing to provide for her POTS in the RFC.

### A. Listing 4.05

Plaintiff first asserts that the ALJ erred in failing to consider the 4.00 listings, specifically Listing 4.05, recurrent arrhythmias. The ALJ did not specifically consider any of the 4.00 listings in the decision. In order to meet Listing 4.05, a claimant must show that she has recurrent arrhythmias, "not related to reversible causes," resulting in uncontrolled, recurrent episodes of cardiac syncope or near syncope despite prescribed treatment and documented by appropriate medically acceptable testing. 20 C.F.R. Part 404, subpt. P, App. 1, 4.05. It is the claimant's burden to establish that she meets the requirements of a listed impairment. *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012) (citing *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006); *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999)).

Plaintiff asserts that her tilt table test from February 2015 along with a few medical notes indicating some continued near syncope is enough to meet Listing 4.05. However, the ALJ's discussion of Plaintiff's POTS in the RFC indicates that Plaintiff has not met the Listing requirements. Listing 4.05 requires that the impairment results in uncontrolled, recurrent episodes of cardiac syncope or near syncope. 20 C.F.R. Part 404, subpt. P, App. 1, § 4.05. Uncontrolled is defined as meaning "the impairment does not adequately respond to standard prescribed medical treatment." 20 C.F.R. Part 404, subpt. P, App. 1, 4.00A3f. As the ALJ discussed in the RFC

3

discussion, Plaintiff's POTS did respond to standard prescribed medical treatment, as it was repeatedly described as "stable" on medication. (AR 21, 411, 428, 430, 504, 854, 860, 868).

Specifically, in April 2017, although Plaintiff continued to complain of dizziness, she was noted to be stable from a cardiovascular standpoint. *Id.* at 428. In October 2017, she reported some episodes of near syncope, but she was still noted to be stable. *Id.* at 430. By April 4, 2018, her physician noted that the combination of medications she was on were working well for her autonomic dysfunction. *Id.* at 411. Plaintiff stated on April 25, 2018, that she had not experienced dizziness in the last 6-8 weeks, and that she had not experienced any chest pain, racing or pounding heart, or syncope. *Id.* at 432. In June 2018, the physician noted that Plaintiff has had only 4 syncope episodes in the last year, but continues to experience lightheadedness and dizziness. *Id.* at 436. Her medication was increased at this visit. *Id.* at 438. One month later, Plaintiff stated that she had no syncope episodes since her last visit, and that she only got lightheaded if she missed a dose of medication. *Id.* at 868. In November 2018, the physician stated that Plaintiff's POTS was stable and well-managed with adherence to her medication. *Id.* at 504. Finally, in April 2019, Plaintiff denied any syncope and stated she had few presyncope episodes which occur mostly after strenuous exercise. *Id.* at 854.

While Plaintiff did fail a tilt table test in February 2015, which indicated primary vasodepressor etiologies, it occurred over two years before the alleged onset date. *Id.* at 21, 878. Plaintiff was treated for her POTS after the tilt table test, and the medical record indicates that standard prescribed medical treatment greatly reduced her symptoms. *Id.* at 411, 428, 430, 432, 436, 504, 854, 860, 868. Plaintiff has not established that she has recurrent arrhythmia that is uncontrolled. Plaintiff cites to a medical note from October 2017 that indicates she experienced near syncope that resulted in her motor skills stopping and her falling to the ground. *Id.* at 430.

4

However, this single note from one month after her alleged onset date does not indicate that her POTS was uncontrolled, as she repeatedly denied frequent syncope and near syncope for two years after that date. *Id.* at 428, 432, 436, 504, 854, 868. Plaintiff can identify no evidence that her POTS caused uncontrolled episodes of syncope or near syncope after the alleged onset date. The ALJ addressed Plaintiff's POTS and syncope in the RFC determination, but did not mention Listing 4.05. However, the ALJ did discuss Plaintiff's POTS, and the evidence supports the ALJ's finding that Plaintiff's POTS was well controlled after her alleged onset date. Therefore, any potential error in failing to discuss Listing 4.05 is harmless. *Schomas v. Colvin*, 732 F.3d 702, 707-08 (7th Cir. 2013) ("[W]e will not remand a case to the ALJ for further explanation if we can predict with great confidence that the result on remand would be the same"). Since the ALJ discussed Plaintiff's POTS and found it was well controlled on medication, it is clear that the ALJ would not find that Plaintiff meets the requirements for Listing 4.05.

## B. Subjective Symptoms

Plaintiff next asserts that the ALJ erred in the subjective symptom analysis by failing to consider her ongoing medication changes and her struggles with medication compliance. An ALJ's subjective symptom analysis will be afforded "considerable deference" and will be overturned only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006). An ALJ must consider a claimant's statements about their symptoms, including pain, and how these symptoms affect the claimant's activities of daily living and ability to work. 20 C.F.R. § 404.1529(a). ALJs must weigh the subjective complaints, the relevant objective medical evidence, and any other evidence of the following:

(1) The individual's daily activities;
(2) Location, duration, frequency, and intensity of pain or other symptoms;
(3) Precipitating and aggravating factors;
(4) Type, dosage, effectiveness, and side effects of any medication;

    (5) Treatment, other than medication, for relief of pain or other symptoms;
    (6) Other measures taken to relieve pain or other symptoms;
    (7) Other factors concerning functional limitations due to pain or other symptoms.

*See* 20 C.F.R. § 404.1529(c)(3); *see also* SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017).

The "subjective symptom evaluation is not an examination of an individual's character." SSR

16-3p, 2017 WL 5180304, at *2.

    Plaintiff asserts that the ALJ failed to properly consider her reports of syncope or her

medication changes in considering her POTS symptoms. However, Plaintiff is merely asking the

Court to reweigh evidence. The ALJ noted that her symptoms are "relatively well controlled,"

specifically finding that the combination of Midodrine and Florinef "works well to control her

syncopal episodes." (AR 21). Plaintiff asserts that the ALJ ignored her occasional syncope and

pre-syncope episodes during the medical record. As discussed above, the medical record indicates

that Plaintiff's syncope and pre-syncope episodes were sporadic and decreased as her medication

was adjusted. *Id.* at 411, 428, 430, 432, 436, 504, 854, 868. Her physician regularly reported that

her POTS was stable and that Plaintiff stated her dizziness and syncope episodes decreased after

her October 2017 visit. *Id.* at 432, 504, 854, 868. Plaintiff has provided no evidence that she was

continuing to experience symptoms that the ALJ should have considered. While she continued to

experience some syncopal episodes shortly after her alleged onset date, by April 2018, she was

experiencing very few symptoms. *Id.* at 430, 848. Moreover, by April 2019, she only experienced

presyncopal episodes after strenuous exercise, and her dizziness and lightheadedness were well

controlled on her medication. *Id.* at 504, 854, 868.

    Plaintiff also asserts that the ALJ failed to consider her medication increases, yet there is

only evidence of medication being increased once (in June 2018), with the physician noting that

"the most recent form of generic midodrine has had a shorter half-life in clinical experience." *Id.*

at 438. There is no evidence that she needed continued medication adjustments outside of this single adjustment during her treatment for POTS. Plaintiff has provided no evidence that she required frequent medication changes.

Plaintiff also asserts that ALJ erred in analyzing her subjective symptoms by improperly relying on her willingness to consider an unpaid job. In discussing Plaintiff's medical history, the ALJ notes that she applied for several jobs and was offered a commission-based job that she ultimately turned down. *Id.* at 21. The ALJ then found that her willingness to work and her ability to volunteer at an animal shelter contradicted Plaintiff's subjective complaints regarding her mental impairments. *Id.* at 22. However, the ALJ did not rely solely on these factors in considering her mental subjective symptoms. An ALJ may consider a claimant's work history as a factor in evaluating symptoms, but it is not a dispositive factor. *See Shumaker v. Colvin*, 632 F. App'x 861, 867 (7th Cir. 2015). The ALJ relied on treatment notes, the effect of Plaintiff's therapy and medications, her chores, as well as her work history and ability to volunteer. (AR 21-22). The ALJ did not err in considering Plaintiff's work history as part of the overall analysis of her subjective symptoms.

### C. Job Numbers and VE Testimony

Plaintiff alleges that the ALJ erred in relying on the VE's testimony, arguing that the VE's job numbers are not supported by substantial evidence. The VE testified that she used the SkillTRAN Job Browser software to determine the job numbers. (AR 60). The VE stated that the Job Browser software gets the job numbers from the Bureau of Labor Statistics, which pulls the numbers from the Occupational Employment Statistic Survey. *Id.* at 61. The VE went on to detail how the Job Browser software, the Bureau of Labor Statistics, and the Occupational Employment Statistic Survey determine the categories for the jobs, including how they are correlated with DOT

codes. *Id.* at 62. The VE stated that each grouping is weighted and factored based on skill level and exertional level before being correlated with a DOT code. *Id.* The VE noted that she takes the numbers that the Job Browser software provides, factors which industries match with the DOT codes, and adjusts the numbers so they only include full time jobs. *Id.* at 63. Plaintiff's counsel objected to the VE's job estimates at the hearing. *Id.* at 61, 63.

Plaintiff asserts that this method is improper, noting that the DOT has not been updated in nearly 30 years. She relies on *Brace v. Saul*, 970 F.3d 818 (7th Cir. 2020) to support her assertion that the VE did not properly explain her methodology. However, *Brace* is not comparable to the case at hand. In *Brace*, the VE did not use any software as a starting point for job numbers, and the VE was unable to explain how he performed the "weighting" he testified to using to determine job numbers. *Brace*, 970 F.3d at 820. The Seventh Circuit found that the VE's inability to explain was "unintelligible," and therefore could not meet the substantial-evidence standard. *Id.* at 822. For a VE's testimony to meet the substantial-evidence standard, it must rest on a well-accepted methodology, and the expert must describe the methodology "cogently and thoroughly." *Id.* (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1155 (2019)).

Here, the VE testified that she used software that is standard in the industry, and she carefully described how the software uses data to determine what numbers correlate to the DOT codes. (AR 23, 61-63). Moreover, courts in this district have held that reliance on the SkillTRAN Job Browser Software is sufficient, particularly where the VE is able to explain how she uses those numbers to correlate to DOT codes. *See Irwin v. Berryhill*, No. 1:17-cv-00408, 2018 WL 5873877, at *13-14 (N.D. Ind. Nov. 8, 2018); *Luna v. Berryhill*, No. 1:17-cv-354, 2018 WL 2316182, at *4 (N.D. Ind. May 21, 2018); *Wilhelm v. Berryhill*, No. 1:17-cv-22, 2017 WL 5248285, at *7 (N.D. Ind. Nov. 13, 2017). The VE here properly relied on a well-accepted methodology and explained

how she used it thoroughly. Therefore, the ALJ properly relied on VE testimony that meets the substantial-evidence standard.

### D. RFC

Finally, Plaintiff argues that the ALJ failed to include limitations related to her POTS in the RFC. Specifically, she alleges that the ALJ did not provide for her need for a "recovery period of fatigue and sometimes headache from syncope or near syncope" or her need for further breaks "just for all the masses of extra water she is *prescribed* to drink." (Pl's Br. 18, ECF No. 24 (emphasis in original)). Plaintiff then provides a description of symptoms and limitations that can be caused by POTS and Ehlers-Danlos syndrome, but she fails to provide any evidence in the medical record that she is suffering from such symptoms or limitations. The records Plaintiff cites to are either prior to her alleged onset date, (AR 428, 878), or from the month following the alleged onset date, (AR 430). The ALJ properly notes that Plaintiff's dizziness, lightheadedness, and syncopal/pre-syncopal episodes greatly improved once Plaintiff was on medication. Moreover, as her syncopal episodes decreased, her post-syncopal headaches and fatigue also decreased. Therefore, any post-syncopal headaches and fatigue are limited in scope and do not need limitations in the RFC. Other records indicate that Plaintiff wears out sooner than her peers but remains active and that she is being asked to drink 64-96 ounces of fluid a day. *Id.* at 267, 432, 436, 438, 854. There is no indication from the record that she requires further limitations related to fatigue or requires extra breaks due to her fluid intake. Plaintiff has provided no evidence that she required further limitations in the RFC.

**CONCLUSION**

The ALJ supported her decision with substantial evidence in the medical record and did not err in analyzing Listing 4.05, Plaintiff's subjective symptoms, the VE testimony, or the RFC analysis. For these reasons, the Court **AFFIRMS** the ALJ's decision.

SO ORDERED on August 9, 2022.

s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN, JUDGE
UNITED STATES DISTRICT COURT